IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| OROCOVIS PETROLEUM CORP., and JOSE F. COLON,<br><br>      Plaintiffs,<br><br>v.<br><br>PUERTO RICO PORTS AUTHORITY and FRED SOSA,<br>      Defendants. | Civil No. 08-2359 (GAG/BJM) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiffs Orocovis Petroleum Corporation ("OPC") and Jose F. Colón ("Colón") filed a complaint against Puerto Rico Ports Authority ("PRPA") and Fred Sosa ("Sosa"),[1] alleging violations of federal and state law. (Docket No. 1). PRPA and Sosa failed to answer the complaint and default was entered against them, pursuant to Federal Rule of Civil Procedure 55(a). (Docket Nos. 6, 7). This case was referred to me by the presiding district judge to conduct a default damages hearing with specific instructions to determine whether plaintiffs, as a matter of law, adequately pleaded any causes of action in their complaint. (Docket No. 44). For the reasons set forth below, I recommend that the first, second, and fourth causes of action be dismissed prior to the commencement of a damages hearing. In addition, I recommend that all claims as to plaintiff Colón be dismissed for lack of standing.

## LEGAL STANDARD

After an entry of default has been made, "the court . . . may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (citing Quirindongo

---

[1]The original complaint also named Empresas Santana as a defendant. However, Empresas Santana filed a responsive pleading in compliance with Federal Rule of Civil Procedure 12(a) and OPC subsequently dismissed all of its claims against that party. (Docket Nos. 12, 41).

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**   Page 2
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)).  The Federal Rule of Civil Procedure 8(a)(2) ("Rule 8") pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, ___U.S.___, 129 S.Ct. 1937, 1949 (2009) (internal quotation omitted) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Specifically, a complaint must allege "a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949.  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (citing Iqbal, 129 S.Ct. at 1949).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Before reciting the relevant facts, I must resolve whether the original or the amended complaint should be used to determine the sufficiency of the claims.  Generally, an amended complaint supersedes the original and renders it of no legal effect.  Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cited in Blair v. City of Worcester, 522 F.3d 105, 109 (1st Cir. 2008).  This case presents a slight complication in that the plaintiffs filed the amended complaint after the entry of default against PRPA and Sosa, but never served either defendant with those pleadings.  (Docket Nos. 6, 7, 29, 32, 33). Under Federal Rule of Civil Procedure 5(a)(2) ("Rule 5(a)(2)"), service is not required on a party in default, "but a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."  Fed. R. Civ. P. 5(a)(2).  But "[w]here changes made in an amended complaint are not substantial, the requirement of [Rule 5(a)(2)] that a pleading that states a new claim for relief against a party in default must be served on that party is not applicable."  Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 20 (D.D.C. 2008) (internal quotations omitted); see Blair, 522 F.3d at 109-10 (refusing to dismiss an unserved amended complaint where the amended complaint was substantively identical to the original).

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**          Page 3
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

      Here, OPC and Colón allege the same five causes of action and factual predicate in both complaints. (Docket Nos. 1, 29). While the amended complaint contains greater detail than the original, especially with regard to the RICO claim, most of that detail is either a reiteration of the facts section found in the original complaint, or an account of the actions of the added defendants. (See Docket Nos. 1, p. 2-5; 29, p. 6-13). Therefore, because the changes made in the amended complaint were not substantial, additional service of process on the original defendants was not required and the amended complaint should be used to determine the sufficiency of the claims. See Fed. R. Civ. P. 5(a)(2); Blair, 552 F.3d at 109-10; Belkin, 667 F. Supp. 2d at 20.

      Accordingly, the following facts, taken from the *amended* complaint, must be accepted as true for the purposes of this analysis.[2]

      Plaintiff OPC is a Puerto Rican company that has previously been involved in the aviation fuel transportation business. Plaintiff Colón is the owner, president, and sole shareholder of OPC.[3] (Docket No. 29, p. 2, 3). In 2004, OPC attempted to enter the aviation fuel dispensing business at Luis Muñoz Marín International Airport ("LMMIA"). To do this, OPC was required to obtain a Fixed Basis Operator ("FBO") permit from defendant PRPA. OPC initially contacted defendant Sosa, Manager of Operations at LMMIA, in regards to the FBO permit application process.[4] Sosa refused to grant an FBO permit to OPC, asserting that the current FBO market at LMMIA was over-saturated. Sosa did not provide OPC with any requested information regarding the details of the application process. Throughout 2005, OPC continued to request an FBO permit from Sosa, but to no avail. (Id. at 2-4).

      In late 2005, OPC submitted its first formal FBO permit application to Sosa. Sosa promptly

---

    [2]In determining the sufficiency of a claim, a court must "accept well-pled factual allegations as true and make all reasonable inferences in the plaintiff's favor." Miss. Pub. Employees' Ret. Sys. v. Boston Scientific Corp., 523 F.3d 75, 85 (1st Cir. 2008).

    [3]Generally, the plaintiffs will be collectively referred to as "OPC."

    [4]It is unclear from the complaint whether OPC initially asked for a permit or merely inquired as to the general permit application process. (Docket No. 1, p. 3).

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**  Page 4
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

denied the application on December 19, 2005. (Id. at 4). OPC submitted a second formal permit application in March 2006. In response to this submission, PRPA's legal division contacted OPC and summoned Colón to its office to sign a contract. However, upon arrival at the office Colón was not allowed to sign the contract. In addition, for reasons not made clear from the complaint, Colón was immediately escorted out of the building. A week later, the PRPA legal division summoned Colón to its office again but no contract was prepared or signed. (Id. at 4-5).

At some point after these incidents, Sosa instructed the PRPA legal division to prepare a non-FBO permit for OPC.[5] Colón signed a contract for this permit on October 9, 2006, after being assured that it would be possible to amend the contract in the future. (Id. at 5). A few months later, OPC sent a letter to PRPA, inquiring as to the possibility of amending the permit. The letter claimed that several airlines desired FBO status be granted to OPC. (Id.).

On January 25, 2007, Sosa informed OPC that PRPA would not be approving any additional FBO permits until certain regulations were amended. However, he suggested that OPC submit a list of the airlines that desired FBO status for OPC. Following this conversation, OPC sent Sosa letters from two airlines that endorsed OPC's efforts to operate as an FBO. Nevertheless, Sosa denied OPC's FBO permit application three more times in 2008. During that time, Sosa approved an FBO permit for another company, Professional Security Services. (Id. at 5-6).

OPC and Colón filed a complaint against PRPA and Sosa in December 2008, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); the Sherman Antitrust Act, 15 U.S.C. § 1 ("Sherman Act"); the Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"); and Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141 ("Article 1802"). (Docket No. 1). Specifically, the complaint asserted five causes of action: (1) liability under RICO; (2) unlawful business practices in violation of the Sherman Act; (3) retaliation by reason of

---

[5] It is unclear from the complaint what a non-FBO permit entails.

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**   Page 5
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

constitutionally protected speech and political ideas in violation of Section 1983; (4) denial of procedural due process in violation of Section 1983; and (5) tortious interference of contract under Article 1802. (Id.). PRPA and Sosa failed to answer the complaint and default was entered against them pursuant to Federal Rule of Civil Procedure 55(a). (Docket Nos. 6, 7). PRPA later filed a motion to vacate entry of default but that motion was denied. (Docket Nos. 51, 55).

On July 25, 2009, subsequent to the entry of default against PRPA and Sosa, OPC amended its original complaint to add additional defendants and provide greater detail of its claims. (Docket No. 29). Service of process was executed on all of the defendants named in the amended complaint except PRPA and Sosa. Curiously, PRPA answered the amended complaint on December 23, 2009, approximately five months after that complaint was filed, in tandem with its motion to vacate entry of default. (Docket No. 51).

This case was referred to me by the presiding district judge to determine whether the well-pleaded facts of the plaintiffs' complaint constitute a legitimate cause of action and, if so, to conduct a default damages hearing pursuant to Federal Rule of Civil Procedure 55(b)(2)(B). (Docket No. 44).

## DISCUSSION

### A.  Does Colón Have Standing?

The first question the amended complaint suggests is Colón's standing to sue in this case. Colón is the owner, president, and sole shareholder of OPC. (Docket No. 27, p.1). Importantly, "[a] shareholder is entitled to sue only where there is a direct injury to the share-holder [sic] in his or her individual capacity, independent of any duty owed the corporation." Ferrer v. Carricarte, 751 F. Supp. 1032, 1034 (D.P.R. 1990); see Alford v. Frontier Enters., Inc., 599 F.2d 483, 484 (1st Cir. 1979). This is true "even though in an economic sense real harm may well be sustained as to the impact of [the defendant's] wrongful acts." Alford, 599 F.2d at 484 (citing Mendenhall v. Fleming Co., Inc., 504 F.2d 879, 881 (5th Cir. 1974) (further citations omitted)). "[T]he law does not permit both the corporation and the shareholder to assert the same cause of action." Ferrer, 751 F. Supp. at 1035.

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**  Page 6
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

Here, Colón and OPC allege identical causes of action, stemming from OPC's business dealings with the defendants. (See Docket No. 29). Colón alleges no injury by defendants separate from his affiliations with OPC. Therefore, Colón has no standing to maintain this action and his claims are vested solely in OPC, so I recommend that all of his claims be dismissed.

### B.    First Cause of Action: Civil RICO

RICO provides a private right of action for treble damages and attorney's fees to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962 prohibits four distinct acts.[6] OPC's complaint does not specify which of the four acts under section 1962 underlie its RICO cause of action. Nevertheless, the prohibited acts under subsections (c) and (d) most closely reflect OPC's allegations. Subsection (c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To assert a violation under section 1962(c), a plaintiff must allege each of four elements required by the statute: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Doyle v. Hasbro, Inc., 103 F.3d 186, 189 (1st Cir. 1996) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

Section 1962(d), for its part, prohibits conspiracies to violate the other subsections of 1962. 18 U.S.C. § 1962(d). To assert a violation under section 1962(d), a plaintiff must allege each of three elements required by the statute: (1) the existence of an enterprise; (2) that each defendant knowingly joined the enterprise; and (3) that each defendant agreed to commit, or in fact committed, two or more specified predicate crimes as part of his participation in the enterprise. Feinstein v. Resolution Trust

---

[6]Specifically, section 1962 prohibits: (1) the use of income derived from a pattern of racketeering activity to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce; (2) the acquisition or maintenance of any interest in an enterprise through a pattern of racketeering activity; (3) conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and (4) conspiring to violate any of these provisions. 18 U.S.C. § 1962(a)-(d).

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**  Page 7
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

Corp., 942 F.2d 34, 41 (1st Cir. 1991) (citing United States v. Angiulo, 847 F.2d 956, 964 (1st Cir. 1988)).

Finally, to have standing to sue under RICO, a plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." George Lussier Enters., Inc. v. Subaru of New England, Inc., 393 F.3d 36, 51 (1st Cir. 2004) (quoting Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).

### *1.    The Complaint Fails to Allege a RICO Enterprise*

Subsections (c) and (d) both require allegations of the existence of a RICO enterprise. To establish the existence of a RICO enterprise, a plaintiff must show either "the existence of a legal entity, such as a corporation, or that a group of individuals were associated-in-fact." Vázquez-Díaz v. Hernández-Arencibia, 2009 WL 2045214, at *2 (D.P.R. July 9, 2009) (citing Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1557 (1st Cir. 1994)). In addition, an enterprise must have an existence that is distinct from its alleged pattern of racketeering activity to be liable under RICO. U.S. v. Turkette, 452 U.S. 576, 583 (1981); Elliott v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989).

OPC does not assert facts indicating that the alleged RICO enterprise constitutes a legal entity. Therefore, it must be assumed that the complaint attempts to allege a RICO enterprise that is "associated in fact." The Supreme Court has held that an "associated in fact" entity must have at least three specific features to constitute a RICO enterprise: a common purpose, relationships among those associated with the enterprise, and a sufficient length of time to permit those associates to pursue the enterprise's common purpose. Boyle v. United States, ___ U.S. ___, 129 S.Ct. 2237, 2244 (2009); see Turkette, 452 U.S. at 583 (defining an association-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct"). The existence of an "associated in fact" enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Boyle, 129 S.Ct. at 2243 (quoting Turkette, 452 U.S. at 583).

Here, the complaint fails to allege a RICO enterprise that is "associated in fact." Although the complaint refers to the defendants as a "*de facto* enterprise," it is devoid of any factual assertions to establish a common purpose or to show that the defendants functioned as a continuing unit. (Docket No. 29, p. 6). OPC claims that PRPA and Sosa systematically denied OPC's permit applications for the purpose of allowing another defendant to maintain a monopoly of the aviation fuel dispensing business at LMMIA. (Id. at 6-7). The complaint then goes on to allege illegal political campaign contributions made by one of the other defendants, purportedly to secure a monopoly status at LMMIA. (Id. at 7). However, the complaint neglects to link these two allegations in any meaningful way. In fact, the complaint fails to show that PRPA and Sosa were even aware that other defendants were making illegal political campaign contributions, let alone that their decisions to deny permit applications were based on those contributions. (See id.). Although the complaint makes passing reference to Sosa's support of the Popular Democratic Party, this by itself is not enough to establish that Sosa's permit denials were connected to political contributions by the other defendants. (Id. at 2). Consequently, OPC has failed to allege the existence of a RICO enterprise.

## 2. *The Complaint Fails to Allege Proximate Cause*

Even if this court were to determine that OPC adequately asserted a violation of section 1962, the RICO claim would still fail due to lack of a "direct relation between the injury asserted and the injurious conduct alleged." See Holmes, 503 U.S. at 268. As noted by the First Circuit, "[p]laintiffs may not succeed by merely proving that the predicate acts were a cause in fact of the plaintiffs' injuries; rather, section 1964(c) requires that the defendant's specified acts of racketeering were the proximate cause of the plaintiffs' injuries." George Lussier, 393 F.3d at 51 (internal quotations omitted) (citing Holmes, 503 U.S. at 268). "[P]laintiffs may not recover in a civil RICO claim if their injuries are so far removed from the defendant's acts that they are indirect and derivative." Id. (citing Holmes, 503 U.S. at 268-69).

Here, OPC fails to establish that PRPA and Sosa's alleged section 1962 violations were the

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.** Page 9
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

proximate cause of its injuries. The injurious conduct attributed to the defendants involves: (1) misrepresentations by mail and wire of the reasons for permit denials; and (2) extortion.[7] (Docket No. 29). The injuries asserted by OPC involve: (1) the inability to secure an FBO permit to be able to conduct business at LMMIA; and (2) subsequent damage to its reputation within the aviation fuel industry. (Docket No. 29, p. 6-13). First, even if the defendants misrepresented the reasons for the permit denials via mail and telephone, these actions were not the direct cause of OPC's inability to secure a permit. OPC's injuries stem not from the misrepresentations, but from the denials themselves, allegedly due to PRPA and Sosa's discriminatory business tactics. See Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006). Second, as far as the extortion claim, the complaint not only fails to allege specific incidents of extortion, but also fails to allege how OPC's injuries were caused by extortion. Consequently, OPC has failed to establish that the defendants' alleged section 1962 violations were the proximate cause of its injuries. Since the complaint fails to establish both the existence of a RICO enterprise and proximate causation, the RICO claim must be dismissed.

  **C. Second Cause of Action: Sherman Act**

  The complaint next alleges that the defendants violated Section 2 of the Sherman Act (Docket No. 29, p. 13), which forbids monopolization, attempted monopolization, and conspiracies to monopolize.[8] 15 U.S.C. § 2. Specifically, OPC asserts that the defendants denied its FBO permit applications so as to "implement a *de facto* monopoly on the providing of such services within the LMMIA." (Docket No. 29, p. 13).

  "While antitrust claims . . . are subject to the notice-pleading standard of [Rule 8], . . .[s]uch

---

[7]OPC also alleges money laundering and bribery in the complaint, but those claims are attributed solely to other defendants not in this case and, therefore, need not be discussed. (Docket No. 29, p. 12).

[8]While the amended complaint specifies Section 1 of the Sherman Act, which prohibits restraint of trade, its references to "a *de facto* monopoly" and "excessive or monopolistic control" make clear that OPC intended to invoke Section 2 of the Act. (Docket No. 29, p. 13).

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**   Page 10
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**


claims must . . . allege facts sufficient to raise a right to relief above the speculative level." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 246 (3d Cir. 2010) (internal quotations omitted). In other words, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 556). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1949-50. Furthermore, the plausibility determination serves two purposes: "(1) to weed out claims that, absent additional pleadings, do not have a reasonable prospect of success, and (2) to inform the defendants of the actual grounds of the claim against them." VanZandt v. Okla. Dep't of Human Servs., 276 Fed. Appx. 843, 847 (10th Cir. 2008) (unpublished) (internal citation omitted).

Here, OPC's antitrust claim can be "weeded out" because PRPA is immune from antitrust liability under Parker v. Brown, 317 U.S. 341 (1943). Parker established that federal antitrust laws do not apply to anticompetitive restraints imposed by the States "as an act of government." Id. at 352. According to the First Circuit, "municipal entities . . . can invoke state action immunity – as can municipal officials acting for them . . . – if they act pursuant to a clearly articulated and affirmatively expressed state policy to displace competition with regulation." Rectrix Aerodome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, ___ F.3d ___, 2010 WL 2510163, at *4 (1st Cir. June 23, 2010) (hereinafter "Rectrix II") (internal citation and quotation omitted); Fisichelli v. Town of Methuen, 956 F.2d 12, 15-16 (1st Cir. 1992); Town of Hallie v. City of Eau Claire, 471 U.S. 34, 38-39 (1985); City of Lafayette, La. v. La. Power & Light Co., 435 U.S. 389, 412-13 (1978) (plurality opinion). This standard does not require a "state legislature to have stated explicitly that it expected [the municipal entity] to engage in conduct that would have anticompetitive effects." Town of Hallie, 471 U.S. at 42. Rather, "[t]he State need only delegate to the municipality the express authority that foreseeably will result in anticompetitive effects." Rectrix Aerodome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 534 F. Supp. 2d 201, 203 (D. Mass. 2008) (hereinafter "Rectrix I"), aff'd, Rectrix II, 2010 WL 2510163 (internal quotation omitted) (quoting

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**  Page 11
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

Town of Hallie, 471 U.S. at 43).

The Puerto Rico Legislative Assembly delegated authority to PRPA through the enabling statutes, 23 L.P.R.A. §§ 331-357. Section 336 authorizes PRPA "to develop and improve, own, operate, and manage any and all types of air . . . transportation facilities and services, . . . and make available the benefits thereof in the most extensive and least costly manner . . . ." 23 L.P.R.A. § 336. Section 336 further grants PRPA the power "to determine, fix, alter, impose and collect rates . . . and other charges for the use of the facilities owned and the services in [LMMIA] . . . which shall be fair and reasonable." 23 L.P.R.A. § 336(l)(1).

While this language might not convey the most fervent of legislative intent to suppress competition, "the case law has interpreted the protection [afforded municipal entities under the immunity doctrine] hospitably." Rectrix II, WL 2510163, at *4. For example, this court has previously construed the same PRPA enabling statute to "clearly articulate[] a state policy to displace competition in the operation and management of air transportation facilities." Ports Auth. of P.R. v. Compañía Panameña de Aviación (COPA), S.A., 77 F. Supp. 2d 227, 233 (D.P.R. 1999) ("Ports Authority"). In Ports Authority, this court actually determined that PRPA had *conferred* sovereign immunity on another entity. Id. at 236. Furthermore, the First Circuit has construed very similar language in the enabling statute of the Massachusetts Port Authority as bestowing state action immunity upon that entity. Interface Group, Inc. v. Mass. Port Auth., 816 F.2d 9, 13 (1st Cir. 1987). Finally, "[c]ourts in other circuits have also approved the application of the state action immunity doctrine in cases where the authority granted by an enabling statute was stated in the most general of terms." Rectrix I, 534 F. Supp. 2d at 205; see, e.g., Hillman Flying Serv. Inc. v. Roanoke, 652 F. Supp. 1142, 1146 (W.D. Va. 1987) (statute authorized airport commissions to "impose regulations to make the most efficient and cost effective air service available to the public"); Four T's, Inc. v. Little Rock Mun. Airport Comm'n, 108 F.3d 909, 914 (8th Cir. 1997) (statute gave the commission the "full and complete authority" to manage the airport); Indep. Taxicab Drivers' Employees v. Greater Houston Transp. Co., 760 F.2d 607, 610-11 (5th Cir.), cert.

Case 3:08-cv-02359-GAG-BJM Document 99 Filed 08/02/10 Page 12 of 13

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**  Page 12
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

denied, 474 U.S. 903 (1985) (a "[s]tatute's broad phrasing is a strong indication of the state's desire to abdicate in favor of municipal prescience with regard to airport management.").

Thus, given the fact that the defendants enjoy state action immunity, OPC's claim against them under the Sherman Act lacks plausibility. Accordingly, I recommend that the claim under the Sherman Act be dismissed.

### D. Fourth Cause of Action: Procedural Due Process

OPC also asserts a violation of its due process rights pursuant to Section 1983. (Docket No. 29, p. 15-16). Specifically, OPC alleges that the defendants denied its due process rights by: (1) refusing to explain the reason behind the FBO permit denials; and (2) refusing to explain the FBO permit application requirements. (Id. at 15). To establish a procedural due process violation pursuant to Section 1983, a plaintiff must show: (1) deprivation of a protected property interest; and (2) a denial of due process. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008).

Here, the complaint fails to plausibly allege a protected property interest. At most, OPC asserts an expectation or desire to obtain an FBO permit, which was thwarted by the defendants' actions. But "[t]o have a property interest in a benefit, a person clearly must have . . . more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). Accordingly, I recommend that the procedural due process claim be dismissed.

### CONCLUSION

For the reasons discussed above, I recommend that default judgment not be entered with respect to the first, second, and fourth causes of action, and that said claims be **DISMISSED**. Additionally, I recommend that all claims as to plaintiff Colón be **DISMISSED** for lack of standing. Once the presiding district judge rules on this report and recommendation, I will promptly set a default damages hearing as to the surviving causes of action.

**Orocovis Petroleum Corp., et al. v. Puerto Rico Ports Authority, et al.**     Page 13
Civil No. 08-2359 (GAG/BJM)
**REPORT AND RECOMMENDATION**

The parties have fourteen (14) days to file any objections to this report and recommendation. See Local Rule 72(d); 28 U.S.C. § 636(b)(1). Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 2nd day of August, 2010.

> *S/ Bruce J. McGiverin*
> BRUCE J. McGIVERIN
> United States Magistrate Judge