IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

OROCOVIS PETROLEUM CORP. and
JOSÉ F. COLÓN,

      **Plaintiffs,**

        v.

PUERTO RICO PORTS AUTHORITY,
et al.,

      **Defendants.**

Civil Action No. 08-2359 (GAG)

## OPINION AND ORDER

Plaintiffs, Orocovis Petroleum Corp. ("OPC") and José F. Colón, bring this case against Defendants, Puerto Rico Ports Authority ("PRPA"), Fred Sosa, and Empresas Santana. (Docket No. 29.) Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964; the Sherman Antitrust Act (the "Sherman Act"), 15 U.S.C. §§ 1–2, 15; the First Amendment and the Due Process Clause of the U.S. Constitution, compensable under 42 U.S.C. § 1983; and Puerto Rico tort law. (See id.)

On December 3, 2009, Plaintiffs moved for a default judgment against Defendants PRPA and Sosa. (See Docket Nos. 42; 87.) This court entered default against Defendants PRPA and Sosa (Docket No. 44) and referred the case to Magistrate Judge McGiverin (see Docket No. 46), who submitted a Report and Recommendation on August 2, 2010 (Docket No. 99). Judge McGiverin recommends dismissal of Plaintiffs' claims under RICO, the Sherman Act, and the Due Process Clause. (See id.) Plaintiffs object to the Report and Recommendation. (See Docket No. 100.)

## I.   Legal Standard for Dismissal

Under Rule 55, upon a party's application for a default judgment, the court may conduct hearings or make referrals to assess damages, establish the truth of allegations by taking evidence, or investigate other matters before entering judgment against the defaulting party. Fed. R. Civ. P.

**Civil No. 08-2359 (GAG)**                    2

55(b)(2).  The court may dismiss a claim sua sponte "if the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless."  González-González v. United States, 257 F.3d 31, 37 (1st Cir. 2001).

When considering dismissal, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor.  Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.' "  Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense.  Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56).  In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief.  Iqbal 129 S. Ct. at 1950.

**II.      Analysis**

**A.      Application of Sovereign Immunity to PRPA**

Under the Eleventh Amendment of the U.S. Constitution, no suit may be brought against a state without its consent.  Royal Caribbean Corp. v. P.R. Ports Auth., 973 F.2d 8, 9 (1st Cir. 1992). This immunity extends to entities that are extensions or alter egos of the state.  See id.  To determine whether an entity benefits from immunity, the court examines the "type of activity" at issue, considering, inter alia, the law and decisions defining the nature of the agency and whether the

**Civil No. 08-2359 (GAG)**                    3

function is governmental or proprietary.  Id.  For the purposes of the Eleventh Amendment, Puerto

Rico is the equivalent of a state.  P.R. Ports Auth. v. M/V Manhattan Prince, 897 F.2d 1, 9 (1st Cir.

1990); see also United States v. Laboy-Torres, 553 F.3d 715, 721 (3d Cir. 2009) ("It is thus not

surprising that 'although Puerto Rico is not a state in the federal Union, it . . . seem[s] to have

become a State within a common and accepted meaning of the word.'") (quoting United States v.

Steele, 685 F.2d 793, 805 n.7 (3d Cir. 1982))) (internal quotation omitted).

  The First Circuit has held that PRPA is immune from tort suits brought by PRPA-licensed

harbor pilots because (1) PRPA does not sell harbor pilotage services; (2) PRPA does not train

pilots; (3) PRPA does not derive revenue from pilotage, as shipowners who are required to use

pilotage pay the pilots directly; and (4) PRPA's regulatory role "is traditionally a governmental, not

a proprietary, function." Royal Caribbean Corp., 973 F.2d at 12 (citing M/V Manhattan Prince, 897

F.2d 1).  However, the First Circuit has also held that PRPA's management of docks resembles a

proprietary landlord-tenant relationship.  See id. at 10.  Thus, PRPA is not immune from suits arising

from the use of its dock facilities by the crew of ships calling at port.  See id. at 12.

  In the instant case, Plaintiffs allege that they unsuccessfully applied to become vendors of

aviation fuel at Luis Muñoz Marín International Airport.  (See Docket No. 29 at 3-6.)  Plaintiffs

accuse Defendants of illegally withholding the necessary Fixed Base Operator ("FBO") permit to

allow Plaintiffs to refuel aircraft at the airport.  (See id.)

  The law governing PRPA's operation of dock facilities is largely the same as that governing

its operation of airports.  See 23 L.P.R.A. §§ 331–354 (2009).  Unlike PRPA's management of its

premises, however, the sales of aviation fuel by licensed vendors resemble harbor pilotage.  In both

cases, independent operators render services and receive payment for such services under the

purview of PRPA's regulations.  See Royal Caribbean Corp., 973 F.2d at 12.  Like its licensing of

harbor pilots who independently service ships entering and leaving the harbor, PRPA does not

directly control the FBOs who refuel aircraft.  Because regulatory activity is traditionally a

governmental function, id., the court holds that PRPA is impervious to lawsuit with respect to

**Civil No. 08-2359 (GAG)**                    4

aviation fuel FBOs.

    **B.**    **Claims Against Sosa**

    The court now turns its attention to Plaintiffs' allegations against Sosa. (See Docket No. 29.) According to Plaintiffs, Sosa is the manager of operations at the airport. (See id. at 2.)

    **1.**    **Civil RICO**

    Under 18 U.S.C. § 1964, private plaintiffs may bring suits to enforce RICO, which outlaws participation in, or deriving benefits from, any enterprise engaged in "a pattern of racketeering activity," 18 U.S.C. § 1962. "From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, --- U.S. ---, 129 S. Ct. 2237, 2244 (2009). For there to be a pattern of racketeering conduct, the defendant must have engaged in certain enumerated illegal activities on at least two occasions within ten years. Id. § 1961(5). Such illegal conduct includes mail fraud in violation of federal law. See § 1961(1).

    In the instant case, Plaintiffs allege that Defendants misrepresented by mail the requirements for Plaintiffs to qualify as an FBO at the airport. (See Docket No. 29 at 4.) Plaintiffs accuse Defendants of engaging in a de facto enterprise to preserve Empresas Santana's privileged role as a vendor of aviation fuel by denying the requisite permit to Plaintiffs. (See id. at 6-13.) As Judge McGiverin notes, however, the complaint fails to link Sosa's denial of the permit to other Defendants or to a conspiratorial enterprise. (See Docket No. 99 at 8.) Indeed, Sosa granted a permit to a competitor (see Docket No. 29 at 11), thereby vitiating the purported purpose of the enterprise – to preserve Empresa Santana's privileged status. Plaintiffs therefore fail to state a plausible RICO claim.

    **2.**    **Sherman Act**

    Plaintiffs accuse Defendants of conspiracy and monopolization in violation of the Sherman Act. (See Docket No. 29 at 13.) Judge McGiverin recommends dismissal of these claims on the

**Civil No. 08-2359 (GAG)**                    5

basis of the state action doctrine.  (See Docket No. 99 at 10-12.)

Section 1 of the Sherman Act forbids unreasonable agreements in restraint of trade.  See 15 U.S.C. § 1; Bd. of Trade v. United States, 246 U.S. 231, 238-39 (1918).  Section 2 of the Sherman Act outlaws monopolization, attempted monopolization, and conspiracies to monopolize.  See 15 U.S.C. § 2; Spectrum Sports v. McQuillan, 506 U.S. 447, 454 (1993).

Notwithstanding these provisions, a state instrumentality is immune from federal antitrust liability if it conducts itself in accordance with a state regulatory scheme.  Interface Group, Inc. v. Mass. Port Auth., 816 F.2d 9, 12-13 (1st Cir. 1987) (holding that Massport is immune from antitrust liability for granting limited number of FBOs).  Similarly, officials acting for such instrumentality are also immune from antitrust liability under this doctrine.  See Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 610 F.3d 8, 13 (1st Cir. 2010) (finding that official defendants cannot be held liable for restricting plaintiff from selling jet fuel at airport).  To benefit from this immunity, official defendants must "act pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition with regulation."  Id. (quoting Fisichelli v. Town of Methuen, 956 F.2d 12, 15-16 (1st Cir. 1992)).  The state's intent to suppress competition "is inferred if suppression is a foreseeable result of a broad delegation."  Id.

As noted earlier, PRPA enjoys broad powers to operate airports and regulate the conduct of FBOs at airports.  See 23 L.P.R.A. §§ 336 (general powers of PRPA); 462 (plenary authority over airports); 464 (airport regulations have force of law).  This generous grant of authority suffices for the purposes of the state action doctrine under First Circuit precedent.  See Rectrix Aerodrome Ctrs., 610 F.3d at 13.  Accordingly, the court finds that Sosa is immune from federal antitrust liability.

### 3.    First Amendment

Citing 42 U.S.C. § 1983, Plaintiffs charge Defendants with violating their right to free speech under the First Amendment to the U.S. Constitution.  (See Docket No. 29 at 13.)  "[I]n order to prevail on a free speech claim, a plaintiff must show that he engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the alleged adverse . . . action."  Welch v. Ciampa, 542 F.3d 927, 936 (1st Cir. 2008) (citing Mt. Healthy City Sch. Dist. Bd.

**Civil No. 08-2359 (GAG)**                    6

of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The denial of a permit by a state actor on account of

the plaintiff's political affiliation would violate free speech.  Nestor Colón Medina & Sucesores, Inc.

v. Custodio, 964 F.2d 32, 41 (1st Cir. 1992).  However, the plaintiff must establish the defendant's

awareness of the plaintiff's political affiliation.  See Welch, 542 F.3d at 938-39 (enumerating

elements of political discrimination in employment context).

Although Plaintiffs accuse Sosa of favoring partisans of the Popular Democratic Party, there

is no indication that Sosa is aware of Colón's affiliation with a different political party.  (See

generally Docket No. 29.)  Accordingly, Colón's political affiliation could not have been a

substantial factor in Sosa's denial of an FBO permit to Plaintiffs.  See Welch, 542 F.3d at 938-39.

Furthermore, Sosa granted an FBO permit to a competitor, and Plaintiffs do not suggest that the

competitor benefitted on account of its political affiliation.  (See Docket No. 29 at 11, 14-15.)

Therefore, the court dismisses Plaintiffs' First Amendment claim because of the implausibility of

their complaint.  See Twombly, 550 U.S. at 555.

### 4.    Procedural Due Process

Citing § 1983, Plaintiffs allege that Sosa's denial of the FBO permit violated OPC's right

to due process of law.  (See Docket No. 29 at 15-16.)  Judge McGiverin recommends dismissal of

this claim for insufficiency of pleading.  (See Docket No. 99 at 12.)

Plaintiffs' complaint focuses on alleged irregularities in the procedures by which Sosa denied

the FBO permit to OPC.  (See Docket No. 29 at 15-16.)  Procedural due process requires the

government to afford parties seasonable notice and a meaningful opportunity to be heard before their

rights to property are affected.  See Fuentes v. Shevin, 407 U.S. 67, 80 (1972).  To establish a

deprivation of statutory property interests, a plaintiff must show that he has "a legitimate claim of

entitlement" that is "more than a unilateral expectation."  Pérez-Acevedo v. Rivero-Cubano, 520

F.3d 26, 30 (1st Cir. 2008) (quoting Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992)).

Plaintiffs aver that Sosa subjected them to a convoluted application process without advising

them of relevant procedures; failed to account for Plaintiffs' qualifications; and arbitrarily granted

the FBO permit to a competitor instead without explanation.  (See Docket No. 29 at 4-6.)  According

**Civil No. 08-2359 (GAG)**                    7

to Plaintiffs, OPC is a viable participant in the market for aviation fuel services and could qualify for an FBO permit.  (<u>See</u> Docket No. 29 at 3, 6.)  Therefore, the court finds, with respect to OPC, that Plaintiffs state a plausible entitlement to relief for denial of procedural due process.

        As Judge McGiverin notes, however, Colón lacks standing under Article III of the U.S. Constitution to claim for injuries suffered by OPC.  (<u>See</u> Docket No. 99 at 5-6.)  "To qualify for standing, a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." <u>Davis v. Fed. Election Comm'n</u>, --- U.S. ---, 128 S. Ct. 2759, 2768 (2008).  While Plaintiffs accuse Defendants of violating OPC's rights, there is no suggestion that the denial of the permit affected Colón directly.  (<u>See generally</u> Docket No. 29.)  Any injury purportedly suffered by Colón is derivative of his role as sole shareholder of OPC.  (<u>See id.</u> at 2.)  The First Circuit has held that such derivative shareholder standing is insufficient to maintain a lawsuit. <u>Alford v. Frontier Enters.</u>, 599 F.2d 483, 484-85 (1st Cir. 1979).  The court therefore finds that Colón lacks the necessary standing to sue for denial of due process under 42 U.S.C. § 1983.

### 5.  Puerto Rico Tort Law

        Lastly, Plaintiffs claim that Defendants' alleged conduct gives rise to extracontractual liability.  (<u>See</u> Docket No. 29 at 16-17.)  Puerto Rico law permits recovery for injuries suffered because of the defendant's fault or negligence. 31 L.P.R.A. § 5141 (2009).  Because no party moved to dismiss the tort claim, the court assumes, without deciding, that Defendants' alleged interference with OPC's business relationships furnishes a basis for a remedy in tort.  However, the court notes again that Colón lacks the standing to sue when his sole injuries are derivative of his shareholder status.  Although Plaintiffs allegedly suffered emotional distress, OPC, a business entity, cannot be subject to emotional harm.  (<u>See</u> Docket No. 29 at 17.)  Furthermore, this averment is tacked to the end of the complaint, apparently as an unsupported afterthought (<u>see id.</u>).  Accordingly, the court finds this allegation implausible and dismisses Colón's tort claim against Sosa.

### III.  Conclusion

        In view of the foregoing, the court hereby **ADOPTS IN PART** Judge McGiverin's Report

**Civil No. 08-2359 (GAG)**                               8

and Recommendation dated August 2, 2010 (Docket No. 99).  The court **DISMISSES WITH**

**PREJUDICE** Plaintiffs' claims against PRPA; Plaintiffs' claims under Civil RICO, the Sherman

Act, and the First Amendment; and Colón's claims against Sosa (see Docket No. 29).  A default

damages hearing before Judge McGiverin shall proceed as to the two surviving claims asserted by

OPC against Sosa for violations of due process and Puerto Rico tort law.  (See Docket No. 87.)

     **SO ORDERED.**

     In San Juan, Puerto Rico this 26th day of August, 2010.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge